UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Case No. 05-342-10 (RCL) |
| | ) | 05-342-15 |
| **CARLOS DELGADO-GOMEZ** | ) | 05-342-18 |
| a.k.a. "Carlanga" (10) | ) | |
| | ) | |
| **JOSE HUGO ALVAREZ-LOZANO (15)** | ) | |
| | ) | |
| **GERARDO TOBON-ROJAS (18)** | ) | |
| a.k.a. "Mateo" | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION
AND PROPOSED ORDER**

The United States, by and through its attorney, Patrick H. Hearn, Trial Attorney, Narcotic and Dangerous Drug Section, United States Department of Justice, hereby respectfully moves this court to order the pretrial detention of defendants Carlos Delgado-Gomez (Delgado), Jose Hugo Alvarez-Lozano (Alvarez), and Gerardo Tobon-Rojas (Tobon) pursuant to 18 U.S.C. § 3142(e).  As set forth herein, there is a statutory presumption in favor of detention because the defendants are charged with, inter alia, Conspiracy to Manufacture and Distribute for the Purpose of Unlawful Importation Into the United States Five Kilograms or More of Cocaine, in violation of 21 U.S.C. § 959 and 960, which is an offense that carries a maximum penalty of more than ten years imprisonment.  Moreover, the government believes the defendants have no ties or no significant ties to the United States; the government believes the defendants have the ability to

flee and would flee if released from custody; and the government believes the defendants would pose a danger to the community unless they detained.

**I.      Factual Background**

Delgado, Alvarez and Tobon have been extradited to the United States from Colombia, South America, based upon charges in this case which arise from evidence obtained during an investigation which revealed that Delgado, Alvarez and Tobon are members of a drug (cocaine) trafficking and transportation organization (DTO). Delgado, Alvarez and Tobon are currently in custody at the Washington, D.C. Jail.

The evidence against Delgado, Alvarez and Tobon and the indicted co-conspirators consist of seizures of cocaine, surveillance, Colombian court-authorized intercepted telephone conversations, and cooperating and/or government witnesses. The evidence from the investigation shows that the DTO operated in and around the north coast of Colombia from at least April 2005, to the at least August 2006. Delgado, Alvarez, Tobon and the other indicted co-conspirators worked together to ensure the transportation of thousands of kilograms of cocaine, intended for transport to the United States, using maritime shipping vessels and "go fast" boats from locations in northern Colombia to transhipment points in Central America or Mexico. From Central America or Mexico the cocaine is transported to final destinations in the United States.

The "go fast" boats, used to transport the cocaine, are specifically designed to hold a ton or more of the cocaine at a time. Moreover, these boats are typically outfitted with two to four high performance outboard engines each, enabling the boats to travel long distances at relatively high speeds, even when fully loaded. The boats leave their loading locations along the northern coast of Colombia to meet maritime shipping vessels at sea to offload the cocaine for further

transportation to Central America or Mexico. Or the "go-fast" boats will proceed directly to offloading locations near the coasts of Central America and Mexico. At the offloading locations, the cocaine shipments are received by other drug trafficking organizations and transported into the United States.

Based upon the evidence in this case, the DTO has shipped thousands of kilograms of cocaine from Colombia to the United States since 2005. Several of those cocaine shipments were seized by law enforcement, specifically, on July 22, 2005, January 21, 2006, March 7, 2006 and March 24, 2006. Members of the DTO fulfill a number of responsibilities within the DTO to facilitate the manufacture and transportation of cocaine from Colombia to Central America or the Caribbean Sea region, then to Mexico, and finally to the United States. There are numerous recorded conversations between members of the DTO concerning shipments and transportation of cocaine in quantities of a thousand kilograms or more. The conversations between members of the DTO involved all aspects of supervising, organizing, and facilitating numerous cocaine shipments, including the cocaine shipments seized by law enforcement agents.

Delgado, Alvarez, Tobon and the other co-conspirators have assisted in arranging financing, purchases of cocaine, logistical support, transportation or storage of cocaine, provision of supplies for the "go-fast" boats, arrangements for the receipt of cocaine by the DTO or arrangements for the delivery of the cocaine to other organizations for ultimate delivery to the United States. Colombian judicially authorized interceptions of the organization's members' telephone conversations show their participation in the overall organization. In various intercepted communications, each of the defendants in this case, including Delgado, Alvarez and Tobon have been heard by law enforcement agents discussing the purchasing and assembling of the cocaine, transport operations, or financial transactions with other members of the drug

organization. Surveillance of the activities of the organization's members has confirmed the trafficking activities discussed by the defendants in the intercepted telephone conversations.

Carlos Delgado-Gomez, based upon the evidence, facilitated cocaine shipments by putting the owners of cocaine in Colombia in contact with the representatives of Mexican cocaine trafficking organizations. He also facilitated, with co-conspirator Alvaro Archbold, the coordination of the ships that meet the "go-fast" boats after they leave the north coast of Colombia carrying the DTO's cocaine. Delgado was a top assistant to Archbold by handling the daily affairs and logistics of Archbold's involvement in the DTO's cocaine transportation. Witnesses have stated that Delgado-Gomez assisted in the July 22, 2005, cocaine shipment. After the seizure of the cocaine, Delgado-Gomez and Archbold discussed that seizure and who would be held accountable for the loss of the cocaine. Delgado-Gomez was also involved in the cocaine shipments seized on January 21, 2006, March 7, 2006, and March 24, 2006.

Jose Hugo Alvarez-Lozano, based upon the evidence, works with co-conspirator Juan de Jesus Rincon-Rojas (Rincon). Alvarez works with and maintains contact with cocaine purchasers, who have agreed to purchase and receive shipments of cocaine through Rincon, in order to arrange the transportation of the cocaine and to facilitate the payment of the purchase price to the proper people. Witnesses have stated that Alvarez assisted in the organization's 55 kilogram cocaine shipment seized on January 21, 2006. Witnesses have stated that there were discussions among Alvarez and other DTO members regarding the transportation of the 55 kilograms of cocaine.

Gerardo Tobon-Rojas, based upon the evidence, is responsible for working with German Villegas-Mejia (Villegas) to arrange for the transportation and shipment of the organization's cocaine. Witnesses have stated there were numerous discussions between Tobon, Villegas, and

Fernando Zapata-Bermudez (Zapata) regarding arrangements for the organization's cocaine shipments and obtaining "asset" reports, which were reports containing information about the locations of Colombian naval vessels in the Caribbean Sea. That information was used by organization members to try to avoid detection and apprehension by law enforcement or military officials of the boats carrying the organization's cocaine destined, eventually, for the United States. Tobon-Rojas also had discussions with Luis Enrique Castaneda-Gonzalez (Castaneda) regarding the storage of the organization's cocaine shipments on Castaneda's property near the Colombian north coast. Witnesses have stated that Tobon was involved in the January 22, 2006, attempt to use the MV Guayacan to transport cocaine, through his efforts to coordinate the use of the boat by the organization. Tobon, Villegas and Zapata discussed the use of the MV Guayacan and getting it ready to transport the cocaine before that attempt.

## II.     Legal Analysis

The federal bail statute authorizes a defendant's pretrial detention when no "condition or combination of conditions will reasonably assure the appearance of the person . . . and the safety of any other person and the community." 18 U.S.C. § 3142(e). The statute further provides that there is a rebuttable presumption that the defendant should be detained if there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act, 18 U.S.C. § 3142(e).

The existence of the indictment in this case establishes probable cause as a matter of law. See e.g., United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990). Moreover, the Government is permitted to proceed by proffer to establish other facts relevant to the bail decision. United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996).

Several other factors in the detention statute also support the Government's request for pretrial detention. First the nature and circumstances of the offense are compelling. 18 U.S.C. § 3142(g)(1). Second, the weight of the evidence against the defendants is substantial. 18 U.S.C. § 3142(g)(2). The evidence in this case consists of seizures of cocaine, go-fast boats transporting the cocaine on international waters, legally authorized wiretaps of the defendants discussing the cocaine, surveillance of the defendants and co-conspirators, and the testimony of cooperating and/or government witnesses.

Third, the defendants are not United States citizens and lack significant ties to the United States. 18 U.S.C. § 3142(g)(3)(A). Alvarez and Delgado are Colombian citizens with no known ties to the United States which argues in favor of their detention pending trial. The government is unaware of any significant ties, including family, work, business, friends or property, of Alvarez and Delgado to the United States. Tobon is a Colombian citizen who is reported by Immigration and Customs Enforcement (ICE) to have alien status in the United States with a green card. However, The government is unaware of any significant ties, including family, work, business, friends or property, of the Tobon to the United States, which argues in favor of his detention pending trial. Several courts have ordered pretrial detention of foreign defendants without any contacts to the United States. E.g., United States v. Vargas, 804 F.2d 157 (1st Cir. 1986) (Chilean defendant in drug importation case who had no family ties to U.S. was properly detained when no conditions or combination of conditions would reasonably assure his appearance at trial); United States v. Geerts, 629 F.Supp. 830 (E.D. Pa. 1985) (defendant was a Dutch citizen who faced the possibility of approximately fifty years imprisonment on customs related charges and had no significant ties to United States; he thus presented a serious risk of flight which justified pretrial detention).

Finally, the defendant constitutes a clear and present danger to the community. 18 U.S.C. § 3142(g)(4). The federal courts have recognized that drug traffickers, particularly those in positions of authority, are likely to continue engaging in drug related activities if released on bail and thus, constitute a danger to the community. See <u>United States v. Knight</u>, 636 F.Supp. 1462 (S.D. Fla. 1986). <u>Accord</u> <u>United States v. Creekmore</u>, 1997 W.L. 732435 (D.D.C. 1997) (Facciola, J.).

### III.    Conclusion

For all of the foregoing reasons, the Government respectfully requests that the motion to detain the defendants without a bond pending trial be granted.

Dated: January 30, 2008

                                          Respectfully submitted

                                          KEN BLANCO, Chief
                                          Narcotics and Dangerous Drug Section

                                          /s/_____
                                          Patrick H. Hearn
                                          Trial Attorney
                                          Narcotics and Dangerous Drug Section
                                          U.S. Department of Justice
                                          1400 New York Avenue, N.W.
                                          Washington, D.C.  20005
                                          (202) 305-7606

### CERTIFICATE OF SERVICE

I hereby certified that a copy of the forgoing Motion for Pretrial Detention and Proposed Order was sent to Brian McDaniel, attorney for Carlos Delgado-Gomez, via email at bkmassociates@aol.com, Heather Shaner, attorney for Hugo Alvarez-Lozano, via email at

hhsesq@aol.com and Howard Katzoff, attorney for Gerardo Tobon-Rojas, via email at katzoffh@aol.com, on January 30, 2008.

    /s/
Patrick H. Hearn
Trial Attorney
U.S. Department of Justice